IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW WHITFIELD, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : COMPLAINT FOR VIOLATION OF THE |
| RETAIL PROPERTIES OF AMERICA, | : SECURITIES EXCHANGE ACT OF 1934 |
| INC., GERALD M. GORSKI, BONNIE S. | : |
| BIUMI, FRANK A. CATALANO, JR., | : |
| STEVEN P. GRIMES, RICHARD P. | : |
| IMPERIALE, PETER L. LYNCH, and | : |
| THOMAS J. SARGEANT, | : |
| | : |
| Defendants. | : |
| | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

**NATURE OF ACTION**

1. On July 18, 2021, Retail Properties of America, Inc. ("RPAI" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Kite Realty Group Trust ("KRG") and KRG Oak, LLC ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, RPAI's stockholders will receive 0.623 shares of KRG common stock for each share of RPAI common stock they own.

3. On September 14, 2021, defendants filed a prospectus (the "424B3") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the 424B3 fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of RPAI common stock.

9. Defendant RPAI is a Maryland corporation. RPAI's common stock is traded on the New York Stock Exchange under the ticker symbol "RPAI."

10. Defendant Gerald M. Gorski is Chairman of the Board of Directors of RPAI (the "Board").

11. Defendant Bonnie S. Biumi is a member of the Board.

12. Defendant Frank A. Catalano, Jr. is a member of the Board.

13. Defendant Steven P. Grimes is a member of the Board.

14. Defendant Richard P. Imperiale is a member of the Board.

15. Defendant Peter L. Lynch is a member of the Board.

16. Defendant Thomas J. Sargeant is a member of the Board.

17. Defendants identified in ¶¶ 10-16 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

18. RPAI is a REIT that owns and operates high quality, strategically located open-air shopping centers, including properties with a mixed-use component.

19. On July 18, 2021, RPAI's Board caused the Company to enter into the Merger Agreement.

20. The press release announcing the Proposed Merger provides as follows:

Kite Realty Group Trust (NYSE: KRG) and Retail Properties of America, Inc. (NYSE: RPAI) today announced that they have entered into a definitive merger agreement under which RPAI would merge into a subsidiary of KRG, with KRG continuing as the surviving public company. The strategic transaction joins together two high-quality portfolios with complementary geographic footprints creating a top five shopping center REIT by enterprise value. The combined company is expected to have an equity market capitalization of approximately $4.6 billion and a total enterprise value of approximately $7.5 billion upon the closing of the transaction assuming a KRG share price of $20.83, which was the closing price on July 16, 2021. This immediately accretive transaction, paired with a strong balance sheet and significant value creation opportunities, is expected to provide a runway to increase long-term value for shareholders.

Under the terms of the merger agreement, each RPAI common share will be converted into 0.6230 newly issued KRG common shares in a 100% stock-for-stock transaction. Based on the closing share price for KRG on July 16, 2021, this represents a 13% premium to RPAI's closing stock price on July 16, 2021. On a pro forma basis, following the closing of the transaction, KRG shareholders are expected to own approximately 40% of the combined company's equity and RPAI shareholders are expected to own approximately 60%. KRG anticipates assuming all RPAI debt and has obtained a financing commitment to provide a $1.1 billion term loan bridge facility in the event certain debt consents cannot be obtained prior to the closing of the transaction. The parties expect the transaction to close during the fourth quarter of 2021 subject to customary closing conditions, including the approval of both KRG and RPAI shareholders. The transaction was unanimously approved by the Board of Trustees of KRG and the Board of Directors of RPAI.

The merger will create an operating portfolio of 185 open-air shopping centers comprised of approximately 32 million square feet of owned gross leasable area. These properties are primarily located in "Warmer and Cheaper" metro markets in the United States with 70% of centers by annualized base rent ("ABR") having a

grocery component. The combined company is expected to benefit from increased scale and density in strategic markets, deeper tenant relationships given the broader mix of open-air retail types, an appropriately sized development pipeline and a strong balance sheet.

"This merger marks a momentous day for KRG and our shareholders," said John A. Kite, Chairman and CEO of Kite Realty Group. "The combination of our firms brings together two high-quality, complementary portfolios. The combined company will have durable cash flows, operational upside and external value creation opportunities. The financial benefits of the transaction include immediate earnings accretion, while maintaining a strong balance sheet. This merger further demonstrates our conviction in open-air retail centers as essential shopping destinations and last mile fulfillment centers. We are energized about the future of this combined company."

"After many years of curating both of our portfolios, combining them into one company will allow us to generate the best results for both sets of shareholders over the long term," said Steven P. Grimes, CEO of RPAI. "Our increased scale will benefit the business both operationally and financially, allowing us to take advantage of reduced cost of capital as well as pursue future value creation opportunities by partnering KRG's development expertise with our embedded development pipeline. We are excited to present this transaction to our shareholders, who will be the beneficiaries of the near-term and future benefits of the combined company."

**Summary of Strategic Benefits**

The merger of KRG and RPAI is expected to create a number of operational and financial benefits, including:

- **Positive Financial Impacts and Immediate Accretion**

  - Provides immediate accretion to earnings per share upon realizing cash expense synergies of $27 - $29 million.

  - Larger scale will reduce cost of capital, thereby driving higher net income to shareholders.

  - Significantly increases shareholder liquidity allowing larger investor base to hold more meaningful positions in the combined entity.

- **Enhances Portfolio Quality and Diversification**

  - Retail ABR per square foot of $19.29.

  - Broader mix of open-air retail types allowing for deeper and more diverse tenant relationships.

4

- 70% of ABR is located in centers with a grocery component.

- Diverse combined tenant base with no single tenant representing more than 2.4% of total ABR.

- **Significant Presence in Strategic Markets**

    - Maintains sector-leading exposure to Warmer and Cheaper markets.

    - Substantial portfolio concentration, with approximately 40% of ABR in growth states of Texas and Florida.

    - Bolsters presence in Dallas, Atlanta, Houston and Austin.

    - Meaningful presence in other strategic gateway markets such as Washington, D.C., New York, and Seattle.

- **Generates Significant Value Creation Opportunities**

    - Presents near-term, organic growth opportunities through lease-up of vacancies caused by the pandemic.

    - Active development and redevelopment projects expected to deliver additional Net Operating Income.

    - KRG's extensive development expertise in a variety of property types provides additional potential value creation for both active and future development projects.

    - Appropriately sized and measured development pipeline will offer potential additional value creation opportunities.

- **Strengthens Balance Sheet**

    - Combined balance sheet poised to capture future growth opportunities.

    - Net debt plus preferred to EBITDA ratio anticipated to be 6.0x inclusive of expected G&A synergies.

    - No material debt maturities until 2023, with an appropriate maturity ladder going forward.

- **Creates a Top 5 Shopping Center REIT**

    - Combined company will have an estimated $7.5 billion total enterprise value upon

the closing of the transaction assuming a KRG share price of $20.83, which was the closing price on July 16, 2021.

- Combination of operating best practices expected to drive Net Operating Income improvements.

- Deepens tenant relationships and increased optionality to a broader mix of open-air retail formats.

**Leadership and Organization**

The combined company will continue to be operated at the high standards previously established at both KRG and RPAI. The number of trustees on KRG's board will be expanded to thirteen with four members of the existing Board of Directors of RPAI to be appointed to KRG's board. John Kite will continue to serve as Chairman of the Board of Trustees of the combined company. William Bindley will continue to serve as Lead Independent Trustee.

The KRG management team will lead the combined company, with John Kite as Chief Executive Officer, Thomas McGowan as President and Chief Operating Officer and Heath Fear as Chief Financial Officer. The approach to integration will draw from the best practices of both companies to ensure continuity for tenants, employees and other stakeholders.

Upon completion of the merger, the company's headquarters will remain in Indianapolis, Indiana. The company will retain the Kite Realty Group name and trademarks and will continue to trade under the NYSE symbol KRG.

**Dividend Policy**

KRG intends to maintain its current dividend policy post-closing. Given the current dividend levels and conversion ratio, RPAI shareholders will experience a dividend increase of approximately 50% from current levels (based on current annualized distribution amount).

The timing of the pre-closing dividends of KRG and RPAI will be coordinated such that, if one set of shareholders receives their dividend for a particular quarter prior to the closing of the merger, the other set of shareholders will also receive their dividend for such quarter prior to the closing of the merger.

**Advisors**

BofA Securities is acting as lead financial advisor to KRG, with KeyBanc Capital Markets also acting as financial advisor to KRG. Hogan Lovells US LLP is acting as legal advisor to KRG. Citigroup Global Markets Inc. is acting as exclusive financial advisor and Goodwin Procter LLP is acting as legal advisor to RPAI.

21. On September 14, 2021, defendants filed the 424B3, which fails to disclose material information regarding the Proposed Merger.

### Financial Projections

22. The 424B3 fails to disclose the line items used to calculate RPAI's and KRG's financial projections.

23. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

### Financial Analyses

24. The 424B3 fails to disclose material information regarding the financial analyses conducted by Citigroup Global Markets Inc. ("Citi"). When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

25. Regarding Citi's Discounted Cash Flow Analysis of RPAI, the 424B3 fails to disclose: (i) the line items used to calculate unlevered free cash flows; (ii) the terminal values; (iii) the inputs and assumptions underlying the terminal capitalization rates and discount rates; (iv) net debt; (v) non-controlling interests; and (vi) projected net operating income.

26. Regarding Citi's Discounted Cash Flow Analysis of KRG, the 424B3 fails to disclose: (i) the line items used to calculate unlevered free cash flows; (ii) the terminal values; (iii) the inputs and assumptions underlying the terminal capitalization rates and discount rates; (iv) net debt; (v) non-controlling interests; and (vi) projected net operating income.

27. Regarding Citi's Selected Public Companies Analyses of RPAI and KRG, the 424B3 fails to disclose the individual multiples for the companies.

28. Regarding Citi's research analyst price targets analyses, the 424B3 fails to disclose: (i) the price targets; and (ii) the sources of the price targets.

29. Regarding Citi's illustrative discounted cash flow analysis of the combined company, the 424B3 fails to disclose: (i) the unlevered free cash flows used in the analysis and the underlying line items; (ii) the inputs and assumptions underlying the terminal capitalization rates and discount rates; and (iii) the synergies.

## COUNT I

**Claim Against the Individual Defendants and RPAI for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

30. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

31. The Individual Defendants disseminated the false and misleading 424B3, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

32. RPAI is liable as the issuer of these statements.

33. The 424B3 was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the 424B3.

34. The Individual Defendants were at least negligent in filing the 424B3 with these materially false and misleading statements.

35. The omissions and false and misleading statements in the 424B3 are material in

that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

36. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the 424B3 and in other information reasonably available to stockholders.

37. The 424B3 is an essential link in causing plaintiff to approve the Proposed Merger.

38. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

39. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

40. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of RPAI within the meaning of Section 20(a) of the Exchange Act as alleged herein.

42. Due to their positions as officers and/or directors of RPAI and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 424B3, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the 424B3 alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

44. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

45. The 424B3 contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the 424B3.

46. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

47. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

48. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

49. Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a 424B3 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act,

as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: October 6, 2021

**GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*

11